THEODORE G. DEAN ET AL. *v.*
GEORGE RILEY, JR., ET AL.
(11301)

FOTI, LANDAU and SCHALLER, Js.

Submitted on briefs February 16—decision released April 20, 1993

*Edward E. Moukawsher* filed a brief for the appellants (plaintiffs).

*Lloyd L. Anderson* filed a brief for the appellees (defendants).

FOTI, J. The plaintiffs, Theodore G. and Beverly H. Dean, appeal from the judgment rendered for the defendants in the plaintiffs' action to quiet title in a claimed right-of-way over the defendants' land and to obtain damages, including attorney's fees and compensatory damages, pursuant to General Statutes § 47-33j.[1] The plaintiffs claim that the trial court improperly found that the claimed easement (1) was not appurtenant to their land and (2) was extinguished. We affirm the judgment.

In 1951, Theodore W. Dean, not a party to this action, took title to approximately seventy acres of land in the town of Canterbury from Diana M. Jeannotte (Dean tract). On December 14, 1963, he quitclaimed an undivided one-half interest in this land to his son, the plaintiff Theodore G. Dean, and retained the remaining one-half interest. On April 2, 1977, the plaintiff quitclaimed his one-half interest in approximately three and one-sixth acres of the Dean tract back to his father, Theodore W. Dean. By a deed dated the same day, The-

---

[1] General Statutes § 47-33j provides: "No person may use the privilege of recording notices under sections 47-33f and 47-33g for the purpose of slandering the title to land. In any action brought for the purpose of quieting title to land, if the court finds that any person has recorded a claim for that purpose only, the court shall award the plaintiff all the costs of the action, including such attorneys' fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting the claim shall pay to the plaintiff all damages the plaintiff may have sustained as the result of such notice of claim having been so recorded."

odore W. Dean quitclaimed the same three and one-sixth acres (Riley tract) to the defendants, George and Deborah R. Riley, reserving in himself a right-of-way over the Riley tract. Theodore W. Dean also owns a tract of land known as the pony farm, which abuts the Dean tract but is not adjacent to the Riley tract. The purpose of the right-of-way was to give Theodore W. Dean access to the pony farm.

At the time he conveyed the Riley tract to the defendants and created the right-of-way, Theodore W. Dean had absolute title to both the pony farm and the Riley tract and a one-half interest in the Dean tract. He then quitclaimed his remaining interest in the Dean tract to the plaintiffs Theodore G. and Beverly H. Dean by two deeds, one dated December 22, 1977, and the second dated February 13, 1978. The latter deed stated that its purpose was "to convey all my remaining interest in [the Dean tract]" to the plaintiffs.

In January, 1988, the defendants conveyed the Riley tract back to Theodore W. Dean, using the same description by which they took title, including the description of the right-of-way. Theodore W. Dean then deeded the Riley tract back to the defendants, expressly *deleting* the right-of-way. The deed stated that its purpose was "to extinguish the easement or right-of-way" on the Riley tract.

In 1988, the plaintiffs contracted to subdivide the Dean tract, but the other party withdrew from the plan because of opposition from Theodore W. Dean and the defendants. In October, 1989, the plaintiffs undertook to subdivide the Dean tract. They also began harvesting timber from that tract. When the contract purchaser of the timber attempted to enter the Dean tract by the right-of-way that the plaintiffs thought was on the Riley tract, he was unable to do so because a truck was blocking the entry.

After a court trial, the court determined that the right-of-way was appurtenant to the nonadjacent pony farm owned by Theodore W. Dean and not to the Dean tract, that the easement had been extinguished by the exchange of deeds between Theodore W. Dean and the defendants in January, 1988, and that the exchange did not slander the plaintiffs' title.

Before addressing the plaintiffs' claims that the court improperly found that the easement was not appurtenant to their land and was extinguished by the exchange of deeds, we must first address whether the easement created was appurtenant or in gross. " 'This question is to be resolved by seeking the intent of the parties as expressed in the deed, and this intent is to be ascertained by reading the words of the deed in the light of the attendant circumstances.' " *Leabo* v. *Leninski,* 182 Conn. 611, 614, 438 A.2d 1153 (1981). The construction of a deed to ascertain its intent "presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances." *Carbone* v. *Vigliotti,* 222 Conn. 216, 222, 610 A.2d 565 (1992).

An easement in gross belongs to the owner of it apart from his ownership or possession of any specific land and, in contrast to an easement appurtenant, its ownership is personal to its owners. *Lichteig* v. *Churinetz,* 9 Conn. App. 406, 411, 519 A.2d 99 (1986). If the easement is in its nature an appropriate and useful adjunct to the land conveyed, with nothing to show that the parties intended it to be a mere personal right, then it is an easement appurtenant. *Birdsey* v. *Kosienski,* 140 Conn. 403, 410, 101 A.2d 274 (1953). "Whether an easement . . . is appurtenant or in gross depends mainly on the nature of the right created and the intention of the parties creating it." *Lichteig* v. *Churinetz,* supra. The easement in the present case is by its nature an appropriate and useful adjunct to the land. It pro-

vided Theodore W. Dean and "his heirs and assigns" with a right-of-way along the easterly bounds of the Riley tract to and from the dominant property. Since there is nothing to show that the parties intended the easement to be a mere personal right, we must conclude that the easement is appurtenant.[2]

The plaintiffs argue that the trial court, in construing the deed as to the purpose of the right-of-way, improperly found, from the testimony of its creator, Theodore W. Dean, that the right-of-way was created to permit access to and from the pony farm, which is located to the west of the Dean tract and separated from the Riley tract.

An easement appurtenant must have a dominant estate that enjoys the benefit of the right-of-way and a servient estate that bears the burden. Such an easement can become legally attached to the dominant estate only if the same person owns both the right-of-way and the dominant estate. *Curtin* v. *Franchetti,* 156 Conn. 387, 389, 242 A.2d 725 (1968). While an easement appurtenant must be of benefit to the dominant estate, the servient estate need not be adjacent to the dominant estate. *Saunders Point Assn., Inc.* v. *Cannon,* 177 Conn. 413, 415, 418 A.2d 70 (1979).

At the time he created the easement, Theodore W. Dean owned the entire fee in both the Riley tract and the pony farm. He only owned one half of the fee in the Dean tract. Dean testified that the right-of-way was created to provide access to the pony farm. The right-of-way reserved in the deed to the Riley tract could not

---

[2] The defendants argue that the deed that created the right-of-way over the Riley tract describes the easement and the servient estate but fails to describe the dominant estate, thus making this only an easement in gross. Alternatively, they argue that the court properly admitted testimony as to creation of the right-of-way; *American Trading Real Estate Properties, Inc.* v. *Trumbull,* 215 Conn. 68, 75, 574 A.2d 796 (1990); in finding that the easement was appurtenant to the pony farm.

have created an easement appurtenant to the Dean tract, because Dean held unity of title only in the Riley tract and the pony farm. "The way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate." *Curtin* v. *Franchetti,* supra.[3]

The plaintiffs argue, however, that the trial court failed to differentiate between the purpose the creator had in mind and the means he employed to accomplish the purpose.

" 'Although in most contexts the issue of intent is a factual question on which our scope of review is limited . . . the determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . .' " (Citations omitted.) *Eis* v. *Meyer,* 17 Conn. App. 664, 667–68, 555 A.2d 994, aff'd, 213 Conn. 29, 566 A.2d 422 (1989). We are thus unconstrained by the trial court's legal conclusion as to intent. See *Carbone* v. *Vigliotti,* supra, 222; *Marion Road Assn.* v. *Harlow,* 1 Conn. App. 329, 332, 472 A.2d 785 (1984) (scope of review generally not limited by "clearly erroneous" standard when the issue of intent, although ultimately factual in nature, presents a question of law).

Nevertheless, when the underlying facts that form the basis of the trial court's legal conclusion as to intent are challenged, our review is limited to determining whether the findings as to those underlying facts are supported by the evidence or whether, in light of the evidence and the pleading in the whole record, those findings are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

---

[3] Our Supreme Court has not reconsidered this unity of title doctrine, having been afforded no appropriate occasion to do so. See *Carbone* v. *Vigliotti,* 222 Conn. 216, 224, 610 A.2d 565 (1992).

Here, because the deed was silent as to the intent of the easement, the trial court was required to determine the creator's intent by examining all of the surrounding circumstances. *Carbone* v. *Vigliotti,* supra. As part of this examination, the trial court considered the testimony of the creator himself, which necessarily gave rise to the creator's credibility. See *American Trading Real Estate Properties, Inc.* v. *Trumbull,* 215 Conn. 68, 75, 574 A.2d 796 (1990). While we need not defer to the trial court's legal conclusion as to intent, we do defer to the court's determination as to the credibility of witnesses and its finding of the facts underlying that conclusion. *Brunswick* v. *Inland Wetlands Commission,* 29 Conn. App. 634, 639, 617 A.2d 466 (1992). The court accepted the testimony of Theodore W. Dean that the intent of the right-of-way was to provide access to the pony farm. From the record, we cannot conclude that this finding was clearly erroneous.

The trial court's legal conclusion as to the intent of the easement was proper; the trial court reasonably concluded that the pony farm was the dominant estate and the Riley tract was the servient estate. Having so concluded, the court properly determined that the exchange of deeds between the defendants and Theodore W. Dean in January, 1988, extinguished the right-of-way over the Riley tract. Since the plaintiffs did not own the easement, they were not entitled to damages for its obstruction. The court also properly concluded that no slander of title to the Dean tract had occurred, because the defendants' actions in 1988 did not constitute a false charge or misrepresentation.

The judgment is affirmed.

In this opinion the other judges concurred.