BIRD PEAK ROAD ASSOCIATION, INC. *v.* BIRD PEAK CORPORATION ET AL.

BIRD PEAK CORPORATION *v.* BIRD PEAK ROAD ASSOCIATION, INC., ET AL.
(AC 19843)

Zarella, Pellegrino and Peters, Js.

Argued October 27, 2000—officially released April 3, 2001

*Martin A. Gould,* with whom, on the brief, was *William F. Healey,* for the appellant (named defendant in the first case, plaintiff in the second case).

*Frank J. Scinto,* for the appellee (plaintiff in the first case, named defendant in the second case).

*Opinion*

PELLEGRINO, J. This is an appeal from judgments quieting title to a private road[1] in favor of Bird Peak

---

[1] The road is described in a deed dated May 5, 1983, and recorded in the Salisbury town clerk's office at volume 128, page 1031. It consists of three segments, a "60.0' proposed town road, a 50.0' private road . . . and the turnaround" connecting the two. In this opinion, we will refer to the segments, collectively, as simply "the road." The road runs through a developed

Road Association, Inc. (association). Bird Peak Corporation (corporation) claims that the trial court improperly construed the language in a deed as granting the corporation only a right-of-way over the road rather than a fee interest in the road. We affirm the judgments of the trial court.

The parties initially instituted two separate actions in which each claimed title to the road.[2] The cases were consolidated and submitted to the court in accordance with joint stipulations and admissions. The undisputed facts are as follows.

The road was formerly owned by Robert F. Weltzien, who acquired it as a portion of a large tract of land deeded to him by Shagroy Farms, Inc. (Shagroy Farms), in 1961. Weltzien developed and subdivided the southern portion of the tract into several lots and constructed the road to provide access to the lots. After he sold all of the lots, he conveyed a tract to the north of the developed tract to Thorpe Mountain, Inc. (Thorpe Mountain), in a deed recorded on May 9, 1983 (1983 deed). Thorpe Mountain never developed the land, and its interest in the land was foreclosed by New Milford Savings Bank. The corporation is successor to whatever title Thorpe Mountain held, having acquired it from New Milford Savings Bank in a 1993 foreclosure sale.

The owners of the lots in the subdivision, pursuant to their deeds, had rights-of-way over the road. They formed the association for the stated purpose of maintaining the road. Thereafter, the association claimed to

subdivision, in which the members of the Bird Peak Road Association own homes, to an undeveloped parcel of land north of the subdivision, owned by Bird Peak Corporation.

[2] The corporation brought claims of trespass and slander of title against the association and its individual members. The association sought an injunction to prevent the marking and removal of trees along the road, as well as damages for trees that had already been removed. The association originally brought its action against Dario Ceppi, an officer or director of the corporation, and later joined the corporation after learning of its existence.

have acquired the fee interest in the road by virtue of a quitclaim deed from Weltzien dated July 23, 1993 (1993 deed).

Sometime in 1994, a representative of the corporation began to cut trees in or about the road area, precipitating the actions that led to this appeal. The association claimed that it held the fee interest in the road pursuant to the 1993 deed and sought to quiet title.[3] It also claimed damages for the corporation's unauthorized cutting of trees along the road.[4] The corporation claimed a fee interest in the road by virtue of the 1983 deed, and it, too, sought to quiet title. The corporation also alleged that the association slandered the corporation's title when the association recorded the 1993 deed in the town land records.

The parties agreed in their written stipulation that the first issue that the court should resolve was whether the 1983 deed conveyed to the corporation a fee interest in the road or merely a right-of-way over it. If the 1983 deed conveyed only a right-of-way to the corporation, then the 1993 deed effectively transferred the fee interest in the road to the association. The remaining issues hinged on the determination of which party had title to the road.

The parties also agreed that to resolve the critical issue of what interest in the road was conveyed by the

---

[3] General Statutes § 47-31 (a) provides: "An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property."

[4] That claim is not a subject of this appeal.

1983 deed, the court needed to analyze four paragraphs in that deed. Paragraph two described the parcel of land north of the subdivision and merely referenced the northern terminus of the road as part of the land's southern border.[5] The parties agree that paragraph two does not otherwise describe the road. Paragraph eleven transfers a right-of-way over the road.[6] Paragraph fifteen conveys any covenants and hereditaments in the subdivision property together with any strips, gores or premises that Weltzien may have retained in the subdivision.[7] Paragraph nineteen, the final paragraph in the deed and the "meaning and intending" clause, expressed Weltzien's intent to convey the premises conveyed to him by Shagroy Farms in 1961, less those portions that he already had conveyed.[8]

---

[5] Paragraph two of the 1983 deed states: "From an iron pipe in the northwesterly line of lands now or formerly of Katrin V. Warfield which iron pipe is located North 67° 48' 30" East 100 feet from an iron pipe in the northeasterly corner of lot #15 on map No. 1204 hereinafter referred to; thence from said point along the line of lands now or formerly of Anna Marie E. Armstrong North 35° 08' 23" West 1,308.37 feet to an iron pipe marking the northerly corner of lot #12 shown on Map No. 1204 hereinafter referred to; thence still along the line of lands of said Armstrong, South 68° 11' 30" West 1,285.03 feet to an iron pipe; *thence across the northerly terminus of the 50.0' private road as hereinafter described and conveyed* South 73° 46' 00" West 55.90 feet to an iron pipe marking the northeasterly corner of lands now or formerly of James L. Marks III and Sally C. Marks; thence along the northerly line of lands of said Marks North 79° 56' 00" West 356.12 feet to an iron pipe in the boundary line between the States of New York and Connecticut." (Emphasis added.)

[6] Paragraph eleven of the 1983 deed states: "ALSO conveyed hereby are rights of way in common with others running over a 60.0' proposed town road, a 50.0' private road . . . and the turnaround, all as shown on said Map No. 1204 hereinafter referred to."

[7] Paragraph fifteen of the 1983 deed states: "Also conveyed hereby is all right, title and interest of the grantor in any covenants or hereditaments in respect of the lands shown on the subdivision Map #1204 hereinafter described or any predecessor or successor subdivision maps, and together with any strips, gores or other premises which the grantor may have retained with respect to said lands."

[8] Paragraph nineteen of the 1983 deed states: "MEANING AND INTENDING to convey all of the premises conveyed to Robert F. Weltzien by deed of Shagroy Farm, Inc. dated August 12, 1961 and recorded in the

The parties agree that paragraph eleven transferred only a right-of-way or easement over the road. The corporation argues, however, that the transfer of "other premises" in paragraph fifteen effectively transferred the remaining fee interest in the road. It claims that the grantor's intent to transfer all of the lands acquired in 1961 that he still held at the time of the 1983 conveyance, as expressed in paragraph nineteen, supports that position. In other words, because the fee interest in the road was not otherwise specifically conveyed, paragraph nineteen indicated the grantor's intent to convey the fee to the road. The corporation claims that this intent is also alluded to in paragraph two by the grantor's reference to the road "as hereinafter described and conveyed." In response, the association argues that paragraph eleven is clear and specific in conveying only a right-of-way in the road and, therefore, the other paragraphs cannot be read to convey a fee interest in the road because that interpretation would render the language in paragraph eleven superfluous.

The court analyzed the critical paragraphs in the 1983 deed and, in a well reasoned memorandum of decision, concluded that the deed merely transferred to the corporation a right-of-way or easement over the road. The court, therefore, quieted title to the road in favor of the association. We agree with the judgments of the trial court.

I

Both the corporation and the association claim a fee interest in the road. The determination of which party owns the fee to the road requires us to construe the relevant terms of the 1983 deed and to discern whether

Salisbury Land Records in Volume 83, Page 557, and by deed of Shagroy Farm, Incorporated, dated January 4, 1965 and recorded in the Salisbury Land Records in Volume 89, Pages 273–275, excluding all property heretofore conveyed."

they express an intent to convey the fee to the road or merely a right-of-way over it.

"[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . . The meaning and effect of the [paragraphs in the 1983 deed] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . . The primary rule of interpretation . . . is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met." (Citation omitted; internal quotation marks omitted.) *Wood* v. *Amer,* 54 Conn. App. 601, 604–605, 736 A.2d 162 (1999), aff'd, 253 Conn. 514, 755 A.2d 175 (2000).

Further, "[i]t is a well established principle of construction that wherever possible each part of the scrivener's phraseology should be given some import. . . . Every word, sentence and provision, if possible, is to have effect, and a construction which requires rejection of an entire clause is not to be admitted . . . ." (Citation omitted; internal quotation marks omitted.) *D'Addario* v. *D'Addario,* 26 Conn. App. 795, 800, 603 A.2d 1199 (1992).

In light of the foregoing principles, we must review the relevant provisions of the 1983 deed, in the context of the overall instrument and the surrounding circum-

stances, to determine whether Weltzien expressed an intent therein to convey a fee interest in the road.

Paragraph eleven of the 1983 deed is clearly at odds with paragraph fifteen and paragraph nineteen, the meaning and intent clause. Paragraph eleven explicitly conveys only a right-of-way over the road, whereas paragraphs fifteen and nineteen may be read, arguably, to transfer the fee in the road. The court relied on the rule enunciated in *Barri* v. *Schwarz Bros. Co.*, 93 Conn. 501, 107 A. 3 (1919), to reconcile the discrepancy. In *Barri*, our Supreme Court ruled that when a deed sets forth two different descriptions of the property to be conveyed, "the one containing the less certainty must yield to that possessing the greater, if apparent conflict between the two cannot be reconciled." Id., 510; see also *Pinney* v. *Winsted*, 79 Conn. 606, 612–14, 66 A. 337 (1907); *Benedict* v. *Gaylord*, 11 Conn. 332, 336–37, 29 Am. Dec. 299 (1836); *Mt. Maumee Partnership* v. *Peet*, 40 Conn. App. 752, 755, 673 A.2d 127, cert. denied, 237 Conn. 924, 677 A.2d 947 (1996); 23 Am. Jur. 2d, Deeds § 298 (1983); 14 R. Powell, Real Property (1999) § 81A.05 [3] [c].

The language used in paragraph eleven was very specific. It clearly conveys only a right-of-way over the road. Any reference to the road in paragraphs fifteen and nineteen, however, is oblique at best. The corporation, nonetheless, argues that the rule in *Barri* is inapplicable in this case. The corporation contends that the paragraphs do not, in fact, conflict because we need not choose between giving effect to one or the others, i.e., they may *all* be given effect by reading paragraph eleven to transfer an easement in the road and the other paragraphs to convey, indirectly, the remaining interest in the road. We disagree with that characterization because the meanings of those paragraphs, as argued by the corporation, present a clear conflict of the type

to which the rule of *Barri* applies to give paragraph eleven primary effect.

The court relied on the specificity of the language in paragraph eleven and gave it precedence over the vague language in paragraphs fifteen and nineteen. We believe that analysis was appropriate and sound. Although the court in *Barri* was faced with conflicting descriptions of property in a deed and it was not possible to give effect to both simultaneously, courts have applied the rule favoring specificity over generality in situations in which that was not the case. For example, in *Mt. Maumee Partnership* v. *Peet,* supra, 40 Conn. App. 755–56, we cited the rule in holding that a deed conveyed only one parcel of land and not that parcel plus another, fully separate and distinct, parcel of land. If the definition of "conflict" for purposes of the rule were as narrow as the corporation urges, we would have found no conflict between the clauses at issue, refused to apply the rule and given both clauses effect.

Moreover, if we were to accept the corporation's interpretation of the 1983 deed, the language in paragraph eleven conveying a right-of-way over the road would be unnecessary, as it would serve no purpose. In *American Trading Real Estate Properties, Inc.* v. *Trumbull,* 215 Conn. 68, 574 A.2d 796 (1990), our Supreme Court, in reviewing a quiet title action, interpreted a deed and held that a fee simple interest in a certain narrow strip of land had been conveyed, rather than an easement. Id., 74–75. The court based its holding on the fact that the grantor had reserved a right to pass over and cross the strip, noting that "[s]uch a reservation of rights would have been unnecessary if the grantors had retained fee simple title to the roadway, since the right to use the property for purposes not inconsistent with a nonexclusive easement would have remained with the grantors." Id., 74. Similarly, in the present case, there would have been no reason for

Weltzien to transfer a right-of-way over the road in paragraph eleven if he intended to transfer the fee in paragraphs fifteen and nineteen because the rights inherent in the fee, being complete, fully encompassed those entailed in a right-of-way.

Our analysis comports with the rule of construction requiring us to give effect to each part of the deed's phraseology. If we were to interpret paragraphs fifteen and nineteen as the corporation urges, we would render the clause of paragraph eleven transferring an easement to the road completely superfluous and, therefore, give it no effect. Additionally, paragraphs two, fifteen and nineteen are in harmony with our construction of paragraph eleven. Paragraph two refers to the road "as hereinafter described and conveyed." That language does not necessarily contemplate the transfer of fee title, as the transfer of an easement is also a type of "conveyance." Furthermore, paragraph fifteen's references to "other premises" likely contemplate premises other than the road. Although the grantor in that paragraph specifically refers to "covenants," "hereditaments," "strips," "gores" and "other premises," conspicuously absent is any mention of "the road" or even "roads" generally. Finally, paragraph nineteen's exclusion of "property heretofore conveyed" from that intended to be presently conveyed may be read to encompass the road, as it had been "heretofore conveyed," as a right-of-way, in paragraph eleven.

That interpretation of the 1983 deed does not lead to an unusual or irrational result. In fact, "[i]t has generally been held that the conveyance of a 'right of way,' or 'right of passageway,' in connection with the conveyance of another parcel of land, conveys only an easement in the portion of the conveyance representing the 'right of way,' and not a fee simple estate." Annot., 89 A.L.R.3d 767, 768 (1979). That often is so, even where an unconditional grant appears in another part of the

deed. Id., 769. Moreover, Connecticut courts have found on several occasions that a developer retained a fee interest in a road even after transferring all of the abutting lots to other parties. See, e.g., *Henriques* v. *Rockefeller*, 148 Conn. 654, 658, 173 A.2d 596 (1961); *Wambeck* v. *Lovetri*, 141 Conn. 558, 563–64, 107 A.2d 395 (1954).

After undertaking our plenary review, we conclude that the 1983 deed transferred only a right-of-way over the road to Thorpe Mountain. Thus, the corporation, as Thorpe Mountain's successor in interest, held only an easement over the road. The 1993 deed, therefore, was effective to transfer the fee interest in the road to the association. Accordingly, the court properly quieted title to the road in favor of the association.

II

The corporation also asserts that we should remand this case to the trial court for reconsideration of its claims of trespass and slander of title. Because the success of each of those claims depended on our reversal of the court's finding that the association held the fee interest in the road; see General Statutes § 47-33j; *Lake Garda Improvement Assn.* v. *Battistoni*, 160 Conn. 503, 517, 280 A.2d 877 (1971); *Dean* v. *Riley*, 31 Conn. App. 87, 93, 623 A.2d 521 (1993); we need not address them and must refuse the requested relief.

The judgments are affirmed.

In this opinion the other judges concurred.