[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION I FACTS
The defendant, Jadwiga Karwowski, the owner of 73-75 Broad Street, New Britain, Connecticut, contracted with the plaintiffs, public insurance adjusters, Executive Services and Louis E. Ranciato, in connection with fire damage occurring at her premises in 1994.[1] The plaintiffs have now commenced this action against her and her husband, the defendant, Mieczyslaw Karwowski, seeking compensation for their services. The five count complaint alleges breach of written contract against Jadwiga Karwowski,[2] breach of oral contract against Mieczyslaw and Jadwiga Karwowski, breach of implied contract against both defendants by Louis Ranciato, breach of implied contract against both defendants by Executive Services and unjust enrichment against both defendants by both plaintiffs.
 II DISCUSSION
The licensing and business conduct of public insurance adjusters is governed by the provisions of General Statutes § 38a-788.[3]
Section 38a-788-6 of the Regulations of Connecticut State Agencies sets forth the required format for the employment contract required to be used by a public adjuster and his client and provides a prototype contract containing certain mandatory language. The regulation obligates the insured to "assign out of the monies due or to become due from said Insurance Companies on account of the said loss a sum equivalent to _____% percent of the amount of the loss when adjusted with the Insurance Companies or otherwise recovered." Regs., Conn. State Agencies §38a-788-6. Section 38a-788-8 of the Regulations of Connecticut State Agencies states that "[n]o public adjuster shall receive compensation in excess of 10% of the actual or final settlement of a loss covered by the employment contract." CT Page 14545
 A Plaintiffs' Entitlement to Performance Bonus
Although the written contracts between Executive Services and Jadwiga Karwowski provide for compensation to Executive Services at the rate of five percent of the amount of the loss, the plaintiffs claim the existence of additional oral contracts in which both defendants agreed to pay Executive Services an additional five percent of the amount recovered, as a bonus to the written agreements, for exemplary services rendered. The plaintiffs allege that the defendants subsequently acknowledged that the plaintiffs' services had been exemplary.
The plaintiffs argue that the regulatory framework for public adjusting contracts does not preclude enforcement of a contract to pay a performance based bonus, and that a definite promise to pay such a bonus was made by Mieczyslaw Karwowski. (See Stipulation of Facts, ¶ 5.) The salient issue, according to the plaintiffs, is not whether such a contract exists, but whether the plaintiffs met the performance standard to justify the bonus. They argue that the alleged oral agreement, although not in conformity with the governing regulation, is nevertheless enforceable.[4]
The plaintiffs argue that the oral agreement is simply a nonconforming contract and, therefore, not required to be within the purview of the regulations. They rely upon the holding of Giordano Associates, Inc. v.Bucur, Superior Court, judicial district of New Haven at New Haven, Docket No. 358060 (May 19, 1994, Hodgson, J.) (11 Conn.L.Rptr. 516, 517), "that the sanction for noncompliance by public adjusters with the . . . regulations concerning the mandatory contract provisions has been limited . . . to regulatory sanctions. . . ." "[T]he statutes . . . do not . . . provide that a public adjuster's contract that does not comply with the applicable regulations is unenforceable. . . ." Id. That case is distinguishable from the one before this court, because the Bucur court specifically addressed the enforceability of the nonconforming written
contract; the alleged contract herein is oral. More importantly, this court does not agree with that proposition. General Statutes § 38a-769
(e) states in part that "[t]he use of such contract shall be mandatory." See also Biller Associates v. Rte. 156 Realty Co., 52 Conn. App. 18, 27,725 A.2d 398 (1999), aff'd, 252 Conn. 400, 746 A.2d 785 (2000). Oral contracts are simply prohibited.
"[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract CT Page 14546 obligations." (Internal quotation marks omitted.) Rosick v. EquipmentMaintenance Service, Inc., 33 Conn. App. 25, 37, 632 A.2d 1134
(1993). "An implied contract can only exist where there is no express one. . . . [Q]uantum meruit [is a form] of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." (Citation omitted; internal quotation marks omitted.)Biller Associates v. Rte. 156 Realty Co., supra, 52 Conn. App. 30, citingRosick v. Equipment Maintenance Service, Inc., supra,33 Conn. App. 37.
In the present case, the contractual procedure in place is set forth at § 38a-788-8, which sets a ceiling on the fee to be paid to a public adjuster at ten percent of the loss. With this regulatory scheme in place, it strains credulity to accept the plaintiffs' version of events that a written contract was entered into for five percent and a separate oral agreement was entered into for another five percent. The plaintiffs could have contracted in writing for ten percent. They chose five percent.
"Although the statutes and regulations that govern licensed public adjusters do not explicitly bar recovery in quantum meruit . . . such recovery . . . would defeat and nullify a material requirement of the . . . statute [§ 38a-788] and regulations, and is contrary to public policy." Biller Associates v. Route 156 Realty Co., supra, 52 Conn. App. 32. In another case in which a bonus was claimed, Meaney v. ConnecticutHospital Assn., Inc., 250 Conn. 500, 523, 735 A.2d 813 (1999), the court rejected the plaintiffs claim for incentive compensation reasoning that the plaintiff was bound to perform his services in accordance with his contract. The court found that where the negotiations for incentive compensation were not finalized, the plaintiff could not seek recovery under unjust enrichment.
The parties to this action entered into three valid written agreements for the performance of the plaintiffs' services, contracts which complied with the regulation and contracts which were honored by Jadwiga Karwowski. The plaintiffs cannot now seek to create an additional obligations on the part of the defendants by alleging the existence of separate oral agreements under the guise of separate nonconforming contracts.
Finally, in regard to Mieczyslaw Karwowski, as noted by the court inBiller Associates v. Route 156 Realty Co., supra, 52 Conn. App. 28, "an employment contract involving a licensed public adjuster requires the participation of two parties: a public adjuster licensed by the state of CT Page 14547 Connecticut and an insured under a policy or policies insuring against loss or damage by fire or other hazard." Id., 28. "[S]atisfaction of that requirement constitutes a condition precedent to the enforceability of a licensed public adjuster's employment contract." Id., 29. Mieczyslaw Karwowski was not an insured under the policy insuring the premises owned by Jadwiga Karwowski; therefore, an oral promise by him to pay a bonus to the plaintiffs is not an enforceable contract. Thus for the reasons stated, this court finds that the plaintiffs are not entitled to a performance bonus.
 B Amount of Recovery on which Plaintiffs' Compensation is Assessed
The second issue that must be determined is the amount to be used to calculate the adjuster's fee. As noted earlier, the regulations require the insured to "assign out of the monies due or to become due from said Insurance Companies on account of the said loss a sum equivalent to _____% percent of the amount of the loss when adjusted with the Insurance Companies or otherwise recovered." Regs., Conn. State Agencies §38a-788-6. The plaintiffs argue that the language of their contracts with Jadwiga Karwowski require calculation of the five percent fee against the gross insurance proceeds paid in accordance with the stipulated judgment on appeal, without any deductions for costs and attorney's fees. They contend that because the assignment of the public adjuster's fee is complete at the time the insured signs the employment contract, the insured has no subsequent power to reduce the amount so assigned. They further argue that the absence of any contractual language permitting a reduction of court costs and attorney's fees is a clear indication that no such deductions can be made by the insured.
The parties to the present action have stipulated that, after making an advance of $50,000 to the insured, Travelers Insurance Company (Travelers) denied Jadwiga Karwowski's claims for insurance benefits for each of the three fires, but also paid $104,138.17 to the mortgage holders of the insured property and brought suit against the insured and her husband to recover the aforesaid payments. The parties further stipulated that the insured brought suit against Travelers for additional sums due under the policy and subsequently received a plaintiffs verdict in the amount of $1,142,172.46, together with a defendant's verdict in the lawsuit brought against her by Travelers. It is also stipulated that Travelers appealed these adverse verdicts and that those appeals were resolved by a stipulated judgment on the record before the court,Bieluch, J.T.R. Further, the parties agree that the stipulated judgment inured to the benefit of the insured in the amount of $1,054,138, of CT Page 14548 which amount $900,000 was paid to the insured who, in turn, endorsed a check in the amount of $300,000 to the order of her attorney, Donald O'Brien, pursuant to a written fee agreement between her and Attorney O'Brien. (See Stipulation of Facts, ¶¶ 8-21.) The plaintiffs claim that because the stipulated judgment for the insured had a total value of $1,054,138, the insured was obligated under the terms of her written contracts to pay five (5%) percent of that amount, or $52,707.00. The insured had, however, paid to the plaintiffs an amount equal to five (5%) percent of $650,000[5] or $32,500, leaving a balance claimed by the plaintiffs of $20,207, plus interest. The plaintiffs argue that $1,054,138 represents the amount "otherwise recovered" under their three employment contracts with the insured.
As the recovery did not result from an adjustment with the insurance company, this dispute is governed by the "otherwise recovered" clause in § 38a-788-6. At the trial level in Biller Associates v. Route 156Realty Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 348897 (October 22, 1996, DeMayo, J.T.R.) (18 Conn.L.Rptr. 132, 134), rev'd on other grounds, 52 Conn. App. 18, 725 A.2d 398
(1999), aff'd, 252 Conn. 400, 746 A.2d 785 (2000), the court held that "`to recover' means to collect, not to pay. An amount `otherwise recovered' implies that only those sums actually received by the adjuster's client should be subject to the . . . charge. . . . The regulation of the public adjuster business serves to protect the insured party . . . from an overreaching adjuster. Such an intent would be further effectuated by a rule that limits the adjuster's compensation to a share of the amount actually received by the insured party." (Emphasis in original.) Id. In yet another case, Judge DeMayo held that "in the absence of a routine settlement by negotiation, the court must determine what was `otherwise recovered.' The settlement with the carrier after suit was brought is `otherwise recovered.'" Biller Associates v.Peterken, Superior Court, judicial district of New Haven at New Haven, Docket No. 354173 (October 10, 1997, DeMayo, J.T.R.), aff'd,58 Conn. App. 8, 751 A.2d 836, cert. denied, 254 Conn. 914, 759 A.2d 506
(2000).[6] In calculating the amount "otherwise recovered," Judge DeMayo accepted a statement from the insurer's attorney regarding the settlement amount, which reflected subtraction of court costs and attorney's fees, and applied the ten percent contract fee against the net settlement. This method of awarding damages was not disturbed on appeal as "the Peterkens produced no evidence at trial showing that the sum awarded to the plaintiff was improper. We therefore will not disturb the court's award of damages." Biller Associates v. Peterken, 58 Conn. App. 8,17, 751 A.2d 836, cert. denied, 254 Conn. 914, 759 A.2d 506 (2000).[7]
In Malis, Inc. v. Commercial Union Ins. Co., Superior Court, judicial district of Danbury, Docket No. 330811 (December 12, 2001, Moraghan,CT Page 14549J.T.R.) (31 Conn.L.Rptr. 93), the court rejected the adjuster's claim to ten percent (10%) of the ultimate settlement resulting from the litigation between the insured and insurer but allowed it on a lesser amount which had previously been provided by the adjuster as the quantified measure of loss.
The plaintiffs contend that the use of the phrase "otherwise recovered" in § 38a-788-6 is merely "to clarify the time when the fee is to be calculated. That time is at the end of the haggling with the insurance company. . . . Once that disagreement has ended . . . it becomes time to calculate the adjuster's fee. That time occurs `when' . . . the amount due from the insurer is `otherwise recovered' through another procedure." (Emphasis added.) (See Plaintiffs' Claims of Law, p. 7.)
Curiously, the plaintiffs do not argue that the meaning of "otherwise recovered" includes recovery by any representative of the insured, such as the insured's attorney and through any means, including litigation. According to the plaintiffs, the department of insurance intended the emphasis of the regulatory language to be on the "timeframe" of the recovery; (see Plaintiffs' Claims of Law, p. 7); and not on the method of the recovery. This narrow interpretation was not adopted by Judge DeMayo when he noted that the intention of the department of insurance in enacting this regulation was to "regulate the relationship between an insured and those who function, like agents and adjusters, asintermediaries between the insured and the insurance company." (Emphasis added.) Biller Associates v. Route 156 Realty Co., supra,18 Conn.L.Rptr. 133.
The plaintiffs, according to the stipulation, "otherwise recovered" $1,054,138. The defendant, however, has deducted her attorney's fees of $300,000, and payment to the mortgage holders of $104,138.17, arguing that she has only recovered the net sum of $600,000 as the result of the stipulated judgment entered during the pendency of the insurance carrier's appeal from the judgment of the trial court. (See Stipulation of Facts, ¶¶ 19 and 21.) She then combined this amount with the $50,000 previously received, which did in fact result from the plaintiffs adjustment with the carrier, to calculate the total amount subject to the five percent public adjuster's fee as $650,000. This court believes this figure is insufficient and does not represent the total recovery upon which the fee should be based. Neither the statute nor the regulations state that the phrase "otherwise recovered" excludes attorney's fees or mortgage payments.[8]
In construing contracts, our Supreme Court has stated that "[a] contract must be construed to effectuate the intent of the parties, which is CT Page 14550 determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . ." (Internal quotation marks omitted.) Lawson v. Whitey's Frame Shop, 241 Conn. 678, 686, 697 A.2d 1137
(1997). The phrase "otherwise recovered" placed after the portion setting forth the amount due "when adjusted" can only mean monies recovered, for the amount of the loss, from the insurance company through other legal means, presumably litigation. No limitation was placed on the phrase and thus its plain meaning must therefore be all monies recovered. This court believes that the full amount, as stipulated by the parties of $1,054,138, satisfies the contract provision and, while the plaintiffs are not entitled to recover a performance bonus, $650,000 is not the appropriate amount under the terms of this contract upon which to assess the plaintiffs compensation. Accordingly, after deducting the $32,500 already paid to the plaintiffs, judgment enters in the amount of $20,206.90.
 ___________________ Berger, J.