DOROTHY WOOD *v.* LAILA AMER ET AL.
(AC 18410)

O'Connell, C. J., and Foti and Lavery, Js.

602

Argued May 25—officially released August 24, 1999

*Stanley A. Twardy, Jr.*, with whom, on the brief, were *Lynn A. Kappelman* and *Deborah S. Gordon*, for the appellant (plaintiff).

*Frederic S. Ury*, with whom, on the brief, were *Neal L. Moskow* and *Deborah M. Garskof*, for the appellee (named defendant).

*Opinion*

FOTI, J. The plaintiff, Dorothy Wood, appeals from the judgment of the trial court denying her a temporary and permanent injunction prohibiting the named defendant, Laila Amer,[1] from building a home on a lot located

---

[1] The plaintiff withdrew the action as against the defendant town of Greenwich prior to trial. We refer in this opinion to the named defendant as the defendant.

across the street from the plaintiff's property in Greenwich. The plaintiff sought the enforcement of certain restrictions contained in the defendant's chain of title, which restrictions, the plaintiff claimed, were created for the benefit of her property. By way of special defense, the defendant argued that the action was barred by the three year statute of limitations set forth in General Statutes § 52-575a. On appeal, the plaintiff claims that the trial court improperly (1) held that the deed conveying the defendant's property contained only one restrictive covenant and (2) determined that the statute of limitations in General Statutes § 52-575a had expired. We reverse the judgment of the trial court.

The trial court found the following facts. Ralph Brush obtained the subject property (lot 10) on March 12, 1935. He conveyed it to the owner of its adjacent parcel (lot 11), George Winslow. Both lots 10 and 11 are directly across Deerfield Lane from the Brush home. The deed transferring lot 10 to Winslow contained the following restrictive covenants: "[T]he premises hereby conveyed, together with the premises owned by the Releasee, being lots 10 and 11 . . . shall be taken together and held as one individual parcel and that there shall not be erected or maintained on said parcel more than one dwelling house for one family only which will cost not less than $15,000, and no outbuildings whatsoever, except one garage and the tool house now erected thereon, and that this covenant shall run with the land hereby conveyed."

When Brush conveyed lot 10 to Winslow, there was an existing dwelling on lot 11. Thus, construction of another residence on the combined parcel was prohibited under the restrictive covenant. The restrictive covenant appeared by reference in every subsequent deed from 1935 to 1971.

In 1971, Kenneth Ford and Joan Ford obtained lots 10 and 11. Kenneth quitclaimed his interest in lot 10 to

Joan in 1983. The quitclaim deed made no reference to the restrictive covenants. The Fords properly recorded the conveyance in the Greenwich land records on June 1, 1983. Although this conveyance violated the restrictive covenant, the plaintiff did not have actual notice of the violation until early 1988.

Joan Ford conveyed lot 10 to the defendant on December 22, 1987, by warranty deed, which made no reference to the restrictive covenants. Although the deed was silent, the defendant had actual notice of the restrictive covenants when she purchased the property from Joan Ford.

The defendant informed the plaintiff of her intention to construct a residence on lot 10 in the spring of 1988. The defendant obtained the necessary permits and paid a contractor to widen Deerfield Lane. The plaintiff informed the defendant that she intended to enforce the restrictive covenant prohibiting the construction of a dwelling, yet she took no legal action at that time. The defendant undertook no steps to begin construction and allowed her building permit to expire in July, 1989. The defendant attempted to sell lot 10, but in April, 1995, unable to find a purchaser, obtained another building permit. The defendant began construction on lot 10 in August, 1997, and the plaintiff filed this action on August 13, 1997.

I

The plaintiff claims that the trial court improperly determined that the Brush deed contained only one restrictive covenant. The plaintiff claims that the Brush deed contained two restrictive covenants (1) the covenant of unified title and (2) the covenant not to build. We agree with the plaintiff.

We must first look at the language of the Brush deed to determine if it imposed one or two restrictive covenants on lot 10. We begin with a statement of the standard of review. "[T]he determination of the intent

behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences." (Citations omitted; internal quotation marks omitted.) *Contegni* v. *Payne*, 18 Conn. App. 47, 51, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989).

"The meaning and effect of the [restrictive covenant] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . . The primary rule of interpretation of such [restrictive] covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met." (Citation omitted; internal quotation marks omitted.) Id., 65. There is no indication that either party attempted to call Brush or Winslow to testify, nor do we know if they are even alive. The intent of the original grantor and grantee must, therefore, be determined by looking at the language of the covenant. The covenant states that "lots 10 and 11 . . . shall be taken together and held as one individual parcel . . . ." The covenant also specifically states that "there shall not be erected or maintained on said parcel more than one dwelling house for one family only . . . ." The two clauses are connected with "and," connoting that they were meant to be separate. If Brush had wanted the two clauses to be dependent, as the trial court found, he could easily have used language making one clause dependent on the other.

The trial court, in its memorandum of decision, focused on the language "one individual parcel" and "on said parcel" in determining that the covenant contained two connected clauses.[2] We believe the trial court focused on the wrong portion of the covenants. Instead of focusing on the "one individual parcel" language, the trial court should have focused on the restrictions imposed in the deed. In *Quintard* v. *Bishop*, 29 Conn. 366, 373 (1860), our Supreme Court, when faced with a situation involving a deed conveying to the grantees a public road and another road that was to remain open until boating on an adjoining canal ceased, held that the restriction of the continuation of boating on the canal applied to only the latter road.[3] The restriction

---

[2] In its decision, the trial court stated: "The restrictive covenant at issue here is relatively clear. It states that lots 10 and 11 should always 'be taken together and held as *one individual parcel* and that there shall not be erected or maintained *on said parcel* more than one dwelling house for one family . . . .' (Emphasis added.) This one covenant contains two connected clauses. The focus, as far as this court is concerned for the present case, is on the language of the restriction stating that no dwelling should be erected 'on said parcel.' 'Said parcel' refers to lots 10 and 11 'taken together.' In 1983, in violation of the restrictive covenant, lots 10 and 11 were divided. Therefore, in the court's mind, the statute of limitations began to run when the plaintiff had actual or constructive notice of the division of the 'parcel.' In other words, the division of the parcel was the 'violation' to which General Statutes § 52-575a applies."

[3] The deed in *Quintard* provides in relevant part: "Know all men by these presents, that I, Isaac Quintard, Jr., of the town of Stamford, in consideration of ten dollars, to me in hand paid by Alfred Bishop of New Jersey, do hereby bind myself . . . to keep open as public highway a road of sixteen feet in width, from the turnpike to a landing-place or basin which said Bishop is about to construct in my corner lot, adjoining Washington Block, the road to be left open east of the present tier of buildings which constitute said block, said block being situated in said Stamford, on the corner south-east of the Presbyterian meeting house; also to keep open as public highway all ground belonging to me on said corner lot, west of the store now occupied by W. & R. Hoyt, and all ground west of a north and south parallel line with the front shed or stoop of said store, and which is north of an east and west line designated as a boundary line between said lot or corner, and land which I have agreed to convey by deed to said Bishop for the purpose of a canal basin, wharf, &c., said ground to be kept open by me as a highway from the time said canal and basin is put in navigable condition for sloops

did not apply to the public road that the grantor covenanted to keep open in perpetuity. Id., 372–73. The court did not focus on the fact that both roads were located on the same parcel. Instead, it focused on the language in the restriction. It is clear in the present case that Brush and Winslow intended that only one house was to be located on either lot 10 or 11. We conclude, therefore, that the trial court improperly determined that the Brush deed contained one covenant with two connected clauses.

## II

The plaintiff next claims that the statute of limitations in § 52-575a[4] had not expired. We agree.

The trial court found that the statute of limitations began to run when the plaintiff received actual notice in 1988 of the conveyance in 1983 of lot 10 from Kenneth Ford to Joan Ford. Although the plaintiff had notice of the breach of the covenant of unified title, the three year limitation period began to run only with respect to the covenant of unified title. Because the plaintiff did not file an action within the limitations period, she is now barred from challenging the 1983 Ford conveyance.

Because we concluded in part I of this opinion that the Brush deed contained two covenants and that it

of ordinary size, forever; provided that the boating business is continued on said canal; and should it at any time be suspended for more than six months at any one time, I to have a right to shut up such highway until said business shall be resumed, and no longer . . . ." (Internal quotation marks omitted.) *Quintard* v. *Bishop*, supra, 29 Conn. 367.

[4] General Statutes § 52-575a provides in relevant part: "No action or any other type of court proceeding shall be brought to enforce a private restriction recorded in the land records of the municipality in which the property is located or a notation on a filed map pertaining to the use of privately owned land, the type of structures that may be erected thereon or the location of same unless such action or proceeding shall be commenced within three years of the time that the person seeking to enforce such restriction had actual or constructive knowledge of such violation. . . ."

is possible to breach one covenant without breaching another; see *Maganini* v. *Hodgson*, 138 Conn. 188, 195, 82 A.2d 801 (1951); the running of the statute of limitations with respect to the covenant of unified title does not preclude the plaintiff from enforcing the covenant not to build.

Section 52-575a provides that a party seeking to enforce a covenant has three years from the date she has notice, actual or constructive, *of the violation* of the covenant to file an action. The defendant claims that the violation of the covenant not to build occurred when the defendant first applied for her building and sewer permits prior to July, 1989. The defendant cites *Watertown* v. *Lamphier*, 18 Conn. Sup. 518 (1954), to support her proposition. The defendant's reliance is misplaced. *Lamphier* did not involve a covenant of any kind, let alone when a covenant is considered to have been violated. It dealt with opposition to the proposed construction of a drive-in theater.

The plaintiff claims that the violation of the covenant not to build occurred when the defendant began physical construction on lot 10. We agree. The plaintiff cites *Shippan Point Assn., Inc.* v. *McManus*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV910119682 (March 23, 1993), aff'd, 34 Conn. App. 209, 641 A.2d 144, cert. denied, 229 Conn. 923, 642 A.2d 1215 (1994), for the proposition that the mere planning of construction does not create a violation of a restriction not to build. While we did not affirm *Shippan Point Assn., Inc.*, on that ground, we agree with the proposition that the defendant asserts. The covenant states that "there shall not be erected" a dwelling. Clearly, the mere contemplation of constructing a dwelling does not violate the clear language of the restriction. Section 52-575a requires that a violation occur before the statute begins to run. Because the violation did not occur until August, 1997, when the defendant began construction

on lot 10, the statute of limitations had not expired when the plaintiff brought this action on August 13, 1997.

The trial court did not reach the merits of the plaintiff's motion for an injunction. It instead denied the plaintiff's request solely on the ground that the statute of limitations had expired.

The judgment is reversed and the case is remanded for further proceedings to determine whether the plaintiff is entitled to injunctive relief on the merits.

In this opinion the other judges concurred.